## STEINMEYER v. STEINMEYER.

1. BOND—JUDGMENT—COLLATERAL PROCEEDING.—The question of the consideration of a bond reduced to judgment cannot be raised in a collateral proceeding.

2. SURETY—MARRIED WOMAN—GRATUITY—BOND.—When a married woman voluntarily secures her husband's debt by bond and mortgage on her separate estate, such bond is not a mere gratuity, but she is morally and legally bound to pay it.

3. No LACHES where bond is sued before barred by statute.

4. MORTGAGE—DONEE—ESTOPPEL—DEFICIENCY JUDGMENT.—A mortgagee is not estopped at instance of donee of mortgagor from collecting deficiency judgment because he consented that purchaser at first foreclosure sale should be released from his bid, and property at second sale did not realize the amount of first bid.

5. INDEBTEDNESS at time of making voluntary conveyance held to be not so inconsiderable as to defeat an action to set them aside.

6. ASSIGNMENT—BURDEN OF PROOF.—Where an assignment shows on its face that it was given for valuable consideration, the party attacking has the burden of showing that it was not.

7. ASSIGNMENT held to be based on valuable consideration.

8. NOTICE—PRINCIPAL AND AGENT—ATTORNEY.—The doctrine that notice to the agent is notice to the principal does not apply to information obtained by an attorney while acting for one client as against another client.

9. CREDITORS—FRAUDS.—WHERE VOLUNTARY CONVEYANCES are set aside for benefit of creditors, all property so conveyed should contribute ratably.

Before ALDRICH, J., Charleston, August, 1898. Modified.

Creditor's bill by Ella G. Steinmeyer and George E. Steinmeyer, for themselves and all other creditors of Eliza R. Steinmeyer, against the executors of A. Matilda Steinmeyer, the devisees under said will, Geo. R. Whitridge, Carrie A. E. Steinmeyer, Thos. Della Torre, Wallace M. Plowden, Wallace S. Plowden, Henry C. Plowden, C. A. Plowden, J. E. Plowden, and executors of S. C. C. Richardson.

The following is so much of the Circuit decree as passes upon the questions raised:

Plaintiffs recovered a judgment in this Court against Mrs. Eliza R. Steinmeyer on November 23d, 1896, in the sum of $3,268.28. On January 31st, 1897, $40 was paid on the judgment. Execution was duly issued, and the same returned *nulla bona* on January 27th, 1897. The conveyances, mortgages, assignments and transfers sought to be set aside are: 1. An assignment by Mrs. Eliza R. Steinmeyer to Wallace M. Plowden, dated May 19th, 1898, of a bond and mortgage. 2. A conveyance from Mrs. Eliza R. Steinmeyer to A. Matilda Steinmeyer, dated October 27th, 1893, of realty. 3. A mortgage from A. Matilda Steinmeyer to George R. Whitridge, dated June 25th, 1894, of the realty referred to in Number 2. 4. A conveyance from Mrs. Eliza R. Steinmeyer to Carrie A. E. Steinmeyer, dated May 8th, 1894, of realty. 5. A mortgage of said realty from Carrie A. E. Steinmeyer to Thomas Della Torre, dated November 10th, 1896.

I will group the exceptions and take them up by reference merely. The first series charge that the master erred in not holding that the cause or causes of action upon which the judgment of plaintiffs rest, was a mere gratuity, and could not be enforced as against other and later gratuities of Mrs. Eliza R. Steinmeyer. George E. Steinmeyer died testate about 1872. The plaintiffs are the widow and child of testator, and the devisees of his will. John H. Steinmeyer, sr., the father of testator, and the brother of testator, John H. Steinmeyer, jr., were the executors of this will. At first John H. Steinmeyer, sr., was the managing executor; but John H. Steinmeyer, jr., as we shall see, in due time took an active part in the management of the estate. As such executors they collected and held $10,000 on an insurance policy on the life of testator, and other assets of the estate. John H. Steinmeyer, sr., executor, wasted the assets of the estate, and was short in his accounts to the extent of $4,828.25. John H. Steinmeyer, jr., discovered this shortage of the assets, caused by his father, and called the matter at once to his attention. Mrs. Eliza R. Steinmeyer, the wife of John H.

Steinmeyer, sr., joined her husband in a bond for said short-
age on August 1st, 1881, payable to John H. Steinmeyer, jr.,
as executor of the estate of George E. Steinmeyer.    This
bond is payable one year after date.    On April 22d, 1890,
Mrs. Eliza R. Steinmeyer secured the payment of this bond
by her mortgage on certain realty on the west and south side
of Beaufain street, in Charleston, and described in the com-
plaint.    By endorsement on said mortgage, under seal, dated
9th of February, 1893, Mrs. Eliza R. Steinmeyer declared
and acknowledged that there was then due · on said bond
$4,828.24, with interest from 1st January, 1892, at        per
cent. per annum, and that there is no discount or set off
against the same, or any part thereof.    On April 29th, 1873,
John H. Steinmeyer, sr., as an individual and in his own
right, executed and delivered his bond, conditioned for the
payment of $4,973.33, and a mortgage of realty to secure the
payment of the same, to the executors of N. Nathans.    This
bond was for the credit portion of the purchase money of
realty, in Charleston, purchased by John H. Steinmeyer, sr.,
from the executors of N. Nathans.    The mortgage covered
the premises so purchased.    John H. Steinmeyer, as execu-
tor of George E. Steinmeyer, and with the money of that
estate, purchased his aforesaid bond from the executors of
Nathans.    For said bond he paid in cash, from the assets of
his son's estate, $5,336.44, the full amount then due on said
bond.    The executors of Nathans assigned this bond in
blank, to the executors of the estate of George E. ·Stein-
meyer.    This was on April 21st, 1874.    On the same day,
April 21st, 1874, the executors of N. Nathans, by endorse-
ment on said mortgage, acknowledged payment in full of the
"within mortgage debt," and declared the same "fully satis-
fied and discharged."    The satisfaction, duly executed, was
not recorded until April 9th, 1878.    When John H. Stein-
meyer, jr., executor, discovered the facts just stated, he
called upon his father for security.    Mrs. Eliza R. Stein-
meyer again came to the relief of her husband, and in the
place of the Nathans bond, she executed and delivered her

own bond for $5,336.44, to the executors of the estate of George E. Steinmeyer. This bond is dated September 3d, 1881, and to secure it Mrs. Eliza R. Steinmeyer, on the same day, executed her mortgage to said executors, conveying the property which she subsequently, in April, 1890, mortgaged to secure her bond of August, 1881, hereinbefore referred to. John H. Steinmeyer, sr., died in 1883. On June 17th, 1893, the State Trust Company of New York began an action in the United States Circuit Court for the District of South Carolina, against the National Land Improvement and Manufacturing Company, John H. Steinmeyer, jr., as executor of estate of George E. Steinmeyer, and others, for foreclosure, injunction and a receiver. Complainants held a junior mortgage on the property covered by the aforesaid two mortgages, the property of the estate of George E. Steinmeyer, and John H. Steinmeyer, as executor of that estate, was made a party as representing these mortgages. This suit culminated in a decree, under which the mortgaged premises were sold at public auction, on April 24th, 1894, to Hugh Ferguson, for $12,000. He declined to comply with his bid, because of alleged defects in the title to the property sold. The matter was referred to a special master, and he made a report thereon. This report was never acted upon by the Court. The Court did make a consent decree or order, to which Mrs. Eliza R. Steinmeyer, though not a party to the action, attached her consent for a resale of the property upon certain terms. It was duly advertised and sold. A portion of the mortgaged premises consisted of "water lots." Ferguson's objection to the title was that there could be no individual property in such lots. Under the consent order and advertisement, only the right, title and interest of the parties to the action was sold. At the resale, on June 11th, 1896, plaintiffs bid in the property for $10,000, which amount, with other small payments, was credited on the debt due by Mrs. Eliza R. Steinmeyer to the estate of George E. Steinmeyer, and left a deficiency due thereon. Both of the aforesaid bonds and mortgages were assigned by the surviv-

ing executor of George E. Steinmeyer, on April 23d, 1894, to plaintiffs as a part of their interest in the estate. This assignment was made pending the suit in the United States Court. On November 23d, 1896, plaintiffs recovered judgment in this Court against Mrs. Eliza R. Steinmeyer, for $3,268.28, as before stated. The deficiency due upon the bonds as aforesaid was the cause of action.

Defendants contend that the bonds and mortgages aforesaid given to make good her husband's devastavit, were without consideration, mere gratuities, and that this Court should not set aside a later gratuity in favor of the judgment, based upon the earlier gratuities, especially in the absence of fraudulent intent. The plaintiffs are not the donees of Mrs. Eliza R. Steinmeyer. She has given them nothing. The bonds and mortgages in question were not given to the estate of George E. Steinmeyer as gratuities; on the contrary, they were given as the evidences of debts due that estate, and to secure the payment thereof. It was wrong in John H. Steinmeyer to use the money of the estate, and in doing so he made himself debtor thereto. His son and coexecutor knew this, hence his demand that his father should make the shortage good. It was for the relief and good of her husband, that Mrs. Steinmeyer secured the shortage by the giving of her bond and mortgage. This bond and mortgage was accepted by executors, not as a gratuity to the estate, but as evidence of a debt thereto. The money of the estate was gone, used by John H. Steinmeyer, sr.; he owed it to the estate, and Mrs. Steinmeyer, under her hand and seal, bound herself and property therefor. If plaintiffs get all of their money, they will get it as devisees of George E. Steinmeyer, and not as a bounty from Mrs. Eliza R. Steinmeyer. When John H. Steinmeyer, sr., bought, as executor, his bond from the executors of Nathans, and caused them to satisfy the mortgage given by him to secure it, he did what was not lawful. He might just as well have taken that much cash from the estate in his custody, and given his unsecured, personal bond to the exe-

cutors.   In this, as in the former instance, the action of his wife was for his relief, to secure his debt to the estate, and was, in no sense, a gratuitiy to the estate.   She received consideration for her bonds and mortgages, too, because by her acts her husband was not pressed, the estate gave up the Nathans bond, and Mrs. Steinmeyer, if she did not get that bond, enabled her husband to get it, and she was allowed time in which to pay her bond and mortgage.   Mrs. Steinmeyer's liability is, to say the least, that of a surety, and if her conduct was that of a donor, in any possible sense of the word, her bounty was extended to her husband, not to these plaintiffs.   This construction is untenable, and these exceptions are overruled.

Some objection was raised to the admission of testimony by the master, not to impeach, but to show the real consideration of the judgment.   The correctness of his ruling, and I think that it was correct, is now of no consequence, as the admission has not injured the parties objecting thereto.

I will next consider the assignment of the bond and mortgage by Mrs. Eliza R. Steinmeyer to Wallace M. Plowden.   In 1883, Wallace M. Plowden and his wife, a daughter of Mrs. Eliza R. Steinmeyer, bought, in their joint names, a plantation in Clarendon County, from James McDowell.   They gave their joint and several bond for the credit portion of the purchase money, dated January 5th, 1883, conditioned to pay $3,270, and interest, and, on the same day, and to secure said bond, they executed a mortgage upon the premises.   Mrs. Eliza R. Steinmeyer, in May, 1883, went to live with Wallace M. Plowden and his wife, in their home in Clarendon, and remained there until June, 1891.   Mrs. Plowden died in April, some two months before her mother left Mr. Plowden's home.   Mrs. Steinmeyer remained with the Plowdens for eight years, and was kindly and considerately cared for by them.   She had her maid there all these years.   She also carried her sick son there, and he, after six months sickness, died there.   She also took an old and decrepid family ser-

vant to the Plowdens, who occupied a room in their house, and she lived there for four years. The Plowdens cared for all. While there Mrs. Steinmeyer caused large quantities of groceries and some dry goods to be sent to the Plowdens home, and they were used by the family. Mrs. Steinmeyer went to the Plowdens upon the joint invitation of her daughter and her husband. She went as an invited member of the family, and nothing was said about board. She paid none, and none was asked. The groceries and dry goods were not purchased for the Plowdens and delivered as in satisfaction of board for her and hers, but seem to have been furnished by her as a member of the family. I wish to say just here that Mr. and Mrs. Plowden, who were poor, did all that a devoted daughter and son could do for an old mother in need of their care and sympathy could do. Mrs. Steinmeyer considered herself in good financial circumstances, and being a woman of generous impulses, it was only natural that she should make presents to her daughter and her family. On January 14th, 1885, and while she was living with the Plowdens, the aforesaid bond and mortgage of the Plowdens was "for value" assigned by James McDowell to Mrs. Eliza R. Steinmeyer. On May 19th, 1891, Mrs. Eliza R. Steinmeyer, "for divers good and valuable considerations, the receipt of which I hereby acknowledge," sold and assigned the said bond and mortgage, "and the money due or to grow due thereon, with the interest, unto the said Wallace M. Plowden." It is well to note that "divers" considerations, "good," also "valuable," are stated and declared in the deed of assignment, which is duly and legally executed. Plaintiffs in their complaint allege on information and belief that the "valuable" considerations stated in the assignment of said bond and mortgage to Plowden, "did not in fact exist, and that said assignment was made without any consideration, and was a mere deed of gift." This allegation, in pleading and in testimony, was stoutly denied by Plowden. He submitted several considerations, and as I do not concur with the master, I will state all the testimony bearing

upon the point upon which we differ.    Wallace M. Plowden
was called as a witness by counsel for plaintiffs, under sec-
tion 391 of Code, and as such testified : "Q.  We find on re-
cord an assignment of bond and mortgage by Mrs. Eliza R.
Steinmeyer, which bond and mortgage was given by (to)
one McDowell, as set out in the complaint, in May, 1891,
will you please state what consideration you paid for that
assignment?  ˙ A.  There are a good many considerations :
the first consideration was that Mrs. Eliza R. Steinmeyer, or
rather the executors of her husband's estate, owed my wife
a life insurance of over $3,000.  Another consideration was
that she lived with me and my family for eight years, nor
was that all; I kept an old decrepid servant for about four
years, servant of Mrs. Eliza R. Steinmeyer.  Another con-
sideration was that we had in the family an invalid son, who
was sick and died in my house; he was sick about six
months.  Another consideration was that during the whole
time that Mrs. Eliza R. Steinmeyer was an inmate of my
home, she had a maid that boarded in the house.  Q.  While
Mrs. Eliza R. Steinmeyer was an inmate of your house is it
not a fact that she had sent up, from time to time, supplies ?
A.  Yes, she had some supplies sent up for herself and others.
Q.. Did not Mrs. Eliza R. Steinmeyer during the periods
which you testified send up supplies almost monthly ?· A.
Part of the time.   Q.  Is it not a fact that your wife's father,
John H. Steinmeyer, sr., died insolvent?   A.  I don't know
of my own knowledge.   Q.  You say that the estate of John
H.  Steinmeyer, sr.,  was  indebted  to  your  wife  on
an insurance policy of $3,100; ˙ was that insurance policy
taken out originally in the name of your wife, or was
it left under the will of John H. Steinmeyer, sr. ?   A.
It was taken out in the name of my wife.   Q.  Who got the
money from the insurance company?   A.  Mrs. Steinmeyer
got it.   Q.  In what insurance company was it?   A.  I think
it was the Manhattan of New York.   Q.  Who gave Mrs.
Eliza R. Steinmeyer the money coming from this policy?  'A.
My wife.   Q.  Did she not consent that that money should

be applied to pay over (on) the indebtedness of her father? A. She did, but as a loan for her father. Q. Have you any written document showing the loan of that money. A. No. Upon the cross-examination, Mr. Purdy, after examining the witness upon other subjects, asked him: Q. At the time that Mrs. Steinmeyer made the conveyance to you, or this transfer to you, did she express what it was for? A. Yes. Q. What did she say? A. It was in part to repay me for the loan that she had from my wife, and the care and attention that I had bestowed on her and hers while in my house. Q. Were you then or are you now a man of large means? A. Not at all, I am a poor man. * * * Q. Did you know that your wife turned over the insurance money of over $3,000 to Mrs. Eliza R. Steinmeyer? A. Yes, I saw the check. Q. That was money which came out of a $10,000 policy on the life of John H. Steinmeyer, deceased, in which your wife had one-third interest, was it not? A. Yes. Q. Do you know of your own knowledge that Mrs. Eliza R. Steinmeyer promised to repay this money to your wife? A. I do. Q. Since this transfer have you taken any administration on the estate of your wife or (attempted) to prove any debt against Mrs. Eliza R. Steinmeyer? A. I took out letters of administration on the debt (death) of my wife. Q. Did you make any effort to prove any debt of Mrs. Eliza R. Steinmeyer? A. No." The master held "that there was no real valuable considerations" for said assignment; that it was a voluntary gift, in the true legal acceptation of that term; and that it should be set aside, and the money due on the bond and mortgage collected and applied to the satisfaction of the judgment of plaintiffs. Wallace M. Plowden excepted to this ruling, and moved the Court to reverse same. I concur with the master in holding that the board, support and care rendered to Mrs. Eliza R. Steinmeyer and hers by the Plowdens, cannot, under the circumstances, in a case of this character, be regarded as a valuable consideration for said assignment, and cannot support the same. It is proper to say, that I came to this conclusion after much

hesitation; because this is a peculiar case, in that, if we consider Mrs. Steinmeyer as an invalid guest or member of the Plowden family, she took her sick son, decrepid servant, and maid there.   If the Plowdens at the time intended to allow the old lady to do these things free of charge, without any agreement for pay from her therefor, they cannot now be allowed to charge therefor.   But as I understand the law, and as it is in exact conformity to the terms of the assignment, Plowden can show, or attempt to show, numerous considerations, and if he shows in any way a valuable legal consideration for the assignment, it must stand.   It is the character, more than the quantity, of the consideration involved in cases of this nature.   The master held that, under the testimony of Mr. Plowden, the assignment must fail.   Under that testimony I think it should stand.   His testimony, forced from him, has not been impeached, and to my mind it bears all the insignia of truth.   True, his testimony is not as clear as it might be; but take it all together, and view it in its entirety and integrity, and it is plain.   There was a policy of insurance upon the life of John H. Steinmeyer, sr., in the Manhattan Company of New York, in the sum of $10,000.   This insurance was payable, or at least one-third thereof, to Mrs. Plowden.   John H. Steinmeyer died in 1883, and the insurance money was paid.   Mrs. Plowden got her share, $3,333.33.   She had it on deposit somewhere, perhaps the insurance company had it subject to her check; at all events, she drew her check for that money in favor of Mrs. Eliza R. Steinmeyer, and she got it—no doubt about this.   She afterwards acknowledged it; and at the time of the assignment of the bond in question, actually stated that the assignment was, in part, based upon this consideration, to wit: the debt she owed to her daughter's estate.   Wallace M. Plowden took it upon that consideration, in part, and has never attempted to collect the insurance money from Mrs. Steinmeyer.   The insurance debt of $3,333.33, with interest thereon from 1883, is more than $3,270, with interest from 1891; and if Mrs. Steinmeyer had done nothing more than

set off her bond and mortgage debt, due to her by Mr. and
Mrs. Plowden against her debt due to Mrs. Plowden, she got
the best of the transaction.    The attempt to say that the
loan was to the estate of John H. Steinmeyer, or "for her"
father, is not tenable.    It is not supported by the facts, nor
did the witness say so—if his testimony is read carefully.
Mrs. Plowden could not have loaned the insurance money to
any one "for her father," for he was dead.    There is no evi-
dence that he left any estate, or that he had an executor or
other personal representative.    The most that can be made
out is that Mrs. Steinmeyer borrowed the money from Mrs.
Plowden, and that she owed it to her.   Perhaps she intended,
and expressed the intention of, using it in payment of her
husband's debts.    As she seems to have been a generous
woman, and anxious to aid her husband, during his life, in
paying or securing his debts, she may have used the money
in payment of his debts; but that makes no difference, after
she borrowed it, she could do what she pleased with it.
Whether or not Wallace M. Plowden was or was not the
administrator of his wife's estate at the time of the assign-
ment of the bond and mortgage, is immaterial; because he is
such administrator, and his appointment redates back to the
death of his wife. As to the assignment being in his individ-
ual name, and not to him as administrator, is a matter of no
concern to plaintiffs, and it will be time enough to consider
that when the distributees, who are interested, bring it up.
Mr. Plowden, as heir of his wife, owns one-third of the
bond, and, as his children are very young, it is probable that
the assignment was made as it is intentionally.    As I hold,
the assignment in question was made upon a valuable and
ample consideration, made fairly, honestly, and in a legal
manner; it follows that the assignment must stand, and the
ruling of the master, in so far as it conflicts with the above,
is reversed.

I concur with the master in holding that the conveyance
from Mrs. Eliza R. Steinmeyer, herein before referred to, to
Mrs. A. Matilda Steinmeyer and to Mrs. Carrie A. E. Stein-

meyer, are voluntary, without valuable consideration, and should, if necessary, be subjected to the satisfaction of the judgment of plaintiffs. I overrule the exceptions to the master's ruling. The evidence is voluminous, and as it clearly demands such a conclusion, I shall not refer to it.

It was contended that the indebtedness of Mrs. Eliza R. Steinmeyer, when she made her voluntary conveyances, was small. She owed at least $11,000, and that was not a small debt for a woman in her circumstances, and it was not for current expenses either. The method of ascertaining indebtedness, as presented by counsel, while ingenious, cannot be applied to this case.

It was argued that plaintiffs and their representatives were guilty of laches, etc., in collecting their debts from Mrs. Eliza R. Steinmeyer. The debts were not barred by time, and no such plea was interposed. It was the right and duty of Mrs. Eliza R. Steinmeyer to pay these debts, and of her voluntary grantees to do so. I can see nothing in this position. The property of Mrs. Eliza R. Steinmeyer has not been lost by accident, such as fire, storm, etc., nor has it been dissipated except by the payment of her debts and voluntary conveyances to her daughters-in-law. "It is vain to say that there was an abundance of other property to have paid the debt. Where is it? It has been squandered. By whom? No one can tell. Whose duty was it to have seen it applied to the payment of the debt? The donor, in the first place, and the donee, after his death, should have seen to its application. It is a wise policy to cast on donors and donees the extinguishment of existing debts, before they can set up a gift." *Brock* v. *Bowman*, Rich. Eq. Ca., 190. This wise rule of law, so forcibly and tersely stated by Judge O'Neill, disposes of these issues, and also bears upon the next.

Defendants contend that the loss of $2,000, the difference between the first and second sale, should be charged to plaintiffs, and credited upon their demand. This position is untenable. The property was sold under the decree of the

United States Court, to which Mrs. Eliza R. Steinmeyer duly attached her consent. She was the owner of the land. Plaintiffs, save as mortgagees, had no interest in the land— they did not own it. They were not restricted to this property in collecting their debts. Plaintiffs were not bound to engage in litigation concerning the mortgaged premises, which the owners thereof seemed to be desirous of avoiding. That the conveyances to Mrs. A. Matilda Steinmeyer and Mrs. Carrie A. E. Steinmeyer are voluntary, and that the property conveyed by them, if necessary, is subject to the payment of the judgment of plaintiffs, see *Jackson* v. *Lewis,* 29 S. C., 196; *Ib.,* reported in 34 S. C., 7, and *Brock* v. *Bowman, supra.*

The master held, and correctly, I think, that the mortgages to Della Torre and Whitridge were valid, and that provision in this action should be made for their payment. No exceptions have been taken to this ruling, in so far as the mortgage to Della Torre is concerned; but this ruling as to Whitridge has been excepted to. Plaintiffs contend that Whitridge is not a subsequent creditor for value, and without notice of the fraud in the title of Mrs. A. Matilda Steinmeyer. Whitridge did not know Mrs. Eliza R. Steinmeyer, never heard of plaintiff's debts; but it is said that her attorney was the attorney also for Mrs. Eliza R. Steinmeyer, Mrs. Matilda Steinmeyer, and John H. Steinmeyer, and knew all of the facts upon which these conveyances are attacked. The attorney in question, one of the ablest lawyers in this State, and a gentleman of exalted character, testified that he never, prior to the acceptance of the mortgage by Whitridge, told him any of the facts and circumstances developed in this case. This is sufficient to dispose of this matter. According to the view of the attorney to whom allusion is made, he did not then, nor does he now, regard his knowledge such as, if known to plaintiffs, could make him a creditor with notice of any fraud, for the reason that there was no fraud in the matter referred to. If Whitridge had had actual knowledge of the debt due by Mrs. Eliza R.

Steinmeyer, now held by plaintiffs, it was not knowledge of a fraud; because, at the time he got his mortgage, no fraud had been developed. "If the conveyance (voluntary) became injurious to creditors afterward, because at some future time the grantor's property had failed to meet the just demands of the creditor, whose claims existed at the time of the deed (the execution of it), then a passive and legal fraud is developed, which, attaching to the deed, renders it void, not from the beginning, but at that moment." *Michalson* v. *Myrick,* 47 S. C., 306. Mr. Whitridge could not have known of a fraud not devoloped and suspected by no one. Again, any knowledge which the attorney of Whitridge had in reference to the matters at issue, was acquired while he was the attorney of the parties named. He derived it from these other clients as their attorney and while engaged in their business. He had no right to impart such knowledge to Mr. Whitridge. He did not acquire it as Whitridge's attorney. * * *

I cannot concur with the master in holding that the property of Mrs. A. Matilda Steinmeyer "stands upon the same footing" with that of Mrs. Carrie A. E. Steinmeyer, and that they "must stand or fall together"—that is, that the conveyances be set aside and the properties be sold at the same time. The conveyance to Mrs. A. Matilda Steinmeyer is senior to that to Mrs. Carrie A. E. Steinmeyer, and, if necessary, they should be sold in the inverse order of their dates. Both properties, if necessary for the satisfaction of the judgment, must be sold. That is the right of plaintiffs. But as between defendants equities may exist, and in this case do exist. It is an old and familiar law that conveyances of mortgaged premises are sold to satisfy the mortgage debt in the inverse order of their alienation. This is because of equities existing between the mortgagor and his grantees. Selling in this way does not injure the mortgagee, and it results in doing equity between grantees. Why should not a similar rule be applied to voluntary grantees of the mortgagor, as well as to grantees for value? The first

purchaser for value from the mortgagor of a portion of the mortgaged premises takes the chance of the mortgagor's paying the mortgage debt, or, in the event of a foreclosure sale, that the rest of the mortgaged property will pay it. Each subsequent purchaser of other portions views the matter in like way, only that he knows that his land will be sold before that of a prior purchaser, and to that extent he takes greater chances. No one makes any one purchase mortgaged premises, and it does not concern the mortgagee. Whenever a grantee accepts a voluntary conveyance from a grantor then in debt, he knows that, in certain contingencies, his land may be sold to pay those debts. In accepting the voluntary conveyance, he does so upon the expectation that the grantor will pay his debts, or upon the belief that the grantor has sufficient remaining property to pay his debts. If he does not rely upon one or both of these expectations, his act is folly pure and simple. The senior voluntary grantee can ascertain what other property his grantor has, and can depend upon that being sufficient to pay grantor's debts. The junior voluntary grantee from the same grantor must exclude from the possession of the grantor the property conveyed to the senior voluntary grantee; because to the extent of the value of the property voluntarily conveyed to the senior grantee, the ability of the grantor to pay his debts is diminished. The grantor has parted with that property, and, as to him, it is just as though he never owned it. The grantee's rights cannot rise higher than those of his grantor in such cases, and the junior voluntary grantee, like the grantor, must regard the voluntary conveyance to the senior grantee as valid, and the property conveyed as no longer liable for the debts of grantor, and, therefore, he should not only regard it, so far as he is concerned, as exempt from sale for the payment of grantor's debts, but he should also consider his property as liable to creditors of grantor prior to the property of the senior voluntary grantee. This view, it seems to me, is based upon law and morals. To give under proper circumstances is commendable. A gift

by one in debt is not void, nor is it fraudulent. It may be voidable; if so, it does not become void until it is developed that it is necessary to sell the gift to pay the debts of the donor, existing at the date of the gift. When that necessity is developed, the gift becomes for that reason, in law, fraudulent. *Michalson* v. *Myrick, supra.* That necessity never can exist in favor of the junior voluntary grantee or donee, because as to him the senior gift was when he accepted his gift and must forever be valid. The reason of the rule applied to mortgagors and their grantees applies in equal, if not greater force, to a debtor and his donees. As sustaining these views, see *Strong* v. *Schultz*, 1 Hill Ch., 500; *Meng* v. *Houser*, 13 Rich. Eq., 210; *Norton* v. *Lewin*, 3 S. C., 25; *Lynch* v. *Hancock*, 14 S. C., 92-3; *Clowes* v. *Dickinson*, 5 Johns. Ch., 235. If it is necessary for either or both of the lots of the voluntary grantees to be sold, that of Mrs. Carrie A. E. Steinmeyer must be sold first, and that of Mrs. A. Matilda Steinmeyer next. If the deed of one of these grantees has to be set aside, and her property sold to pay the judgment of plaintiffs, she has no right to contribution from the other grantee. I have discussed this proposition in the last, and can only refer again to the reasons there stated. *Clowes* v. *Dickinson*, 5 Johns. Ch., 235. This case is cited approvingly in *Meng* v. *Houser*, 13 Rich. Eq., 210. * * *

From this decree all parties appeal, except defendants, Thos. Della Torre and G. R. Whitridge. The latter submitted additional grounds upon which to sustain decree.

*Messrs. Buist & Buist* and *Lord & Burke,* for plaintiffs, cite: *As to proof of consideration:* 29 S. C., 193. *Reservation of interest to donor vitiates conveyance:* 36 S. C., 55. *Creditor's bill proper remedy here:* Rich. Eq. Cases, 185; 10 Rich. Eq., 338; 26 S. E. R., 224. *Conveyances are void as against debts existing at time of execution:* 2 N. & McC., 544; Rich. Eq. Cases, 190; 2 Bail., 128; 34 S. C., 6; 22 S. C., 526. *Consideration of debt in judgment cannot be attacked collaterally:* 34 S. C., 452; 46 S. C., 474; 1 DeS.,

219. *Notice to attorney is notice to client:* 162 U. S., 276; 22 S. E. R., 601; 47 S. C., 306; 33 S. C., 451.

*Messrs. Ficken, Hughes, & Ficken,* for the executors and devisees of the will of A. Matilda Steinmeyer, and Whitridge, cite for latter: *Voluntary deed is good until insolvency of grantor:* 47 S. C., 306; 33 S. C., 538; 18 S. C., 529; 28 S. C., 111.    *Transfer by voluntary grantee to innocent party for value is unassailable:* Rev. Stat., 1891; 9 Paige, 136; 6 S. C., 159; 1 Hill Ch., 293; 41 S. C., 436; 103 U. S., 22.    *Knowledge acquired by an attorney while acting for one client, is not presumed to be made known to another client:* 33 S. C., 473; 37 S. C., 100; 40 S. C., 151; 50 S. C., 290; 79 N. Y., 102.    *Bonds upon which plaintiff's judgment is based are without consideration, and this proceeding ought not to be based on them:* 8 Rich. L., 437; 96 Mass., 37; 104 N. Y., 196; 52 N. Y., 368; 5 Pick., 391; 1 Speer L. 368; 104 N. Y., 196.    *Plaintiffs guilty of laches in suing bonds:* Rich. Eq. Ca., 189; McM. Eq., 41; 25 S. C., 114; 11 Rich. Eq., 39.    *Indebtedness of grantor being small at time of execution of deeds, proceeding should not be allowed:* 14 Rich. L., 100; 11 Wheat., 213; 3 S. C., 498; Bail. Eq., 228; 1 Bail., 584.

*Messrs. Purdy & Reynolds,* for Wallace M. Plowden, cite: *Notice to sustain decree on additional grounds proper practice:* 15 S. C., 44.    *Moral obligation is sufficient consideration to support a conveyance:* 63 Ia., 181; 2 Bail., 56.

*Messrs. Mordecai & Gadsden,* for Carrie A. E. Steinmeyer, cite: *Voluntary grantees all stand on same footing after conveyances set aside:* 2 Hill, 203; 2 Rand., 384; 31 Grat., 620; 28 Ib., 925; 33 Ib., 507.

April 18, 1899.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.   This action was commenced on the 4th of February, 1897, by the plaintiffs, as

judgment creditors of the defendant, Eliza R. Steinmeyer, in behalf of themselves and all other creditors of the said Eliza R. Steinmeyer, who shall, in due time, come in and seek relief by and contribute to the expenses of this action. The object of the action is to have certain conveyances, made by said Eliza R. Steinmeyer to different members of her family, as well as certain mortgages executed by the grantees in such conveyances, set aside, and the property mentioned therein sold, and the proceeds applied to the payment of the judgment in favor of the plaintiffs, and to the claims of all other creditors of the said Eliza R. Steinmeyer entitled to share therein, according to their legal priorities; and also to have the assignment of the bond and mortgage given by the defendant, Wallace M. Plowden, and his wife, Mary E. Plowden, to James McDowell, executed by said Eliza R. Steinmeyer to said Wallace M. Plowden, set aside upon the ground that the same was voluntary and without valuable consideration, and that the debt secured by said mortgage be collected and the proceeds applied to the payment of plaintiffs' judgment and to the claims of such other creditors of said Eliza R. Steinmeyer, entitled to share therein, according to their legal priorities. The case was heard by his Honor, Judge Aldrich, upon exceptions to the report of Master Sass, to whom it had been referred to hear and determine all the issues in the case. The decree of the Circuit Judge was filed on the 13th of August, 1898, a copy of which is set out in the "Case," which should be incorporated by the Reporter in his report of this case. From this decree all of the parties, except Thomas Della Torre (in whose favor the master reported, and there was no exception to that part of the report), appeal upon the various exceptions set out in the record. We do not deem it necessary to repeat these exceptions here, especially as in several instances the exceptions of the several parties present the same points. We think it better to state the several questions which we understand are raised by the exceptions, and then to inquire

whether the Circuit Judge has erred in determining any or all of such questions.

These questions may be stated as follows: 1st. Whether the bonds upon which the claim of the plaintiffs originally rested were based upon valuable consideration, or were mere gratuities from Eliza R. Steinmeyer to the plaintiffs? In view of the fact that these bonds have been regularly reduced to judgment in an action brought upon them, it seems to us that it is now too late to raise this question, especially in a collateral proceeding like this. But even if these bonds had never been reduced to judgment, it is very clear, from the undisputed testimony, that these bonds were based upon valuable consideration, and can, in no sense, be regarded as gratuities. They were given to secure the payment of a valid debt due by J. H. Steinmeyer, sr., to the estate of his son, to which the plaintiffs became entitled under the provisions of the son's will. It is true that Mrs. Eliza R. Steinmeyer did not originally owe that debt, but when she signed these bonds, she practically became the surety of her husband, who did owe the debt, and she thereby became morally as well as legally bound to pay such debt. But we need not add anything to what the Circuit Judge says in his decree upon this point. All the exceptions raising the first question must, therefore, be overruled.

2d. Whether the plaintiffs were guilty of such *laches* in enforcing their claim as would bar this action?

3d. Whether the consent order of the United States Court for the resale of the property bid off by Ferguson at the first sale estops the plaintiffs from bringing this action?

4th. Whether the indebtedness of Eliza R. Steinmeyer at the time of making the voluntary conveyances was so inconsiderable as to defeat this action? We are entirely satisfied with the views taken by the Circuit Judge as to the second, third and fourth questions, and for the reason stated in his decree we affirm his conclusions.

The exceptions raising these questions must, therefore, be overruled.

5th. Whether the assignment of the Plowden bond and mortgage was based upon valuable consideration, or was voluntary? We agree with the Circuit Judge in the view which he takes of this question, and think his reasoning is sufficient to sustain his conclusion. We desire to add, however, that the plaintiffs, in the 15th paragraph of their complaint, allege that this assignment purports on its face to be based upon valuable consideration, and this allegation is admitted in the answer of Mrs. Eliza R. Steinmeyer. But what is more, the copy of this assignment set out in the "Case" shows that it was based upon valuable consideration. When this is the case, the burden of proof is upon the plaintiffs to show that there was no valuable consideration for this assignment, but that burden has not been met. On the contrary, the allegation in the 16th paragraph of the complaint, made only upon information and belief, is distinctly denied, not only in the answer of Plowden, but also in the answer of Mrs. Eliza R. Steinmeyer; and the undisputed testimony of Plowden is that there was valuable consideration for the assignment. The testimony leaves no doubt upon our minds that Mrs. Eliza R. Steinmeyer got from her daughter, Mrs. Plowden, insurance money to which she was entitled, amounting to more than the debt secured by the mortgage to McDowell, and there is no testimony tending to show that this money was ever repaid, except as a consideration for the assignment in question. The exceptions raising the fifth question must, therefore, be overruled.

The sixth question is: Whether the mortgagee, Whitridge, at the time he took his mortgage, had such notice as would defeat his right to claim as purchaser for valuable consideration without notice? Here again we agree with the Circuit Judge in the view which he has taken of this question, and think his conclusion is sufficiently vindicated by what he has said in his decree. We

may add, however, that it is quite certain that the testimony fails to show that Whitridge had any actual personal notice. On the contrary, Mr. Whitridge testifies that at the time he took his mortgage he did not know Mrs. Eliza R. Steinmeyer, never had heard of her, and had no knowledge of her affairs; and Mr. Ficken testifies that he never communicated to Whitridge any information which he had previously obtained in reference to the business affairs of the Steinmeyers. Indeed, under the view which he then had, and still has, with reference to the dealings of Mrs. Eliza R. Steinmeyer with her property, there was no reason why he should communicate such information to Mr. Whitridge. before, or at the time he took his mortgage. It is obvious, therefore, that the only ground upon which it could be claimed that Whitridge had notice, is the fact that Mr. Ficken had notice of the condition of affairs, and that his client, Whitridge, must be regarded as having had notice, upon the doctrine that notice to the agent is notice to the principal. But Ficken's knowledge was not acquired while acting as attorney or agent for Whitridge, but was acquired while acting as attorney for other parties, and hence the doctrine does not apply in this case. See *Akers* v. *Rowan,* 33 S. C., 451; *Knobelock* v. *Bank,* 50 S. C., 259. The exceptions raising the sixth question must, therefore, be overruled.

7th. Whether there was error in holding that the conveyance from Mrs. Eliza R. Steinmeyer to Mrs. Carrie A. E. Steinmeyer was voluntary and without valuable consideration? The exception raising this question, though not abandoned, was not pressed in the argument. But in view of the fact that this conveyance purports, on its face, to be a voluntary conveyance, and in view of the concurrent finding of the master and the Circuit Judge, which is fully sustained by the testimony, this exception must be overruled.

8th. The eighth and last question presented is: Whether there was error in ordering that the lands conveyed to Mrs. Carrie A. E. Steinmeyer should be sold before those conveyed to Mrs. A. Matilda Steinmeyer? We cannot agree

with the Circuit Judge in the view which he has taken of this question. The conveyances to both of these ladies were purely voluntary—neither of them having paid any valuable consideration. They, therefore, stand upon the same footing, and neither of them has any prior or superior equity to the other; and they, therefore, must share rateably in the burden which rests upon their lands. The Circuit Judge rests his conclusion upon the analogy drawn from the rule that where a mortgagor *sells* to third persons, at different times, different portions of the mortgaged premises, the first *purchaser* has an equity to require the mortgagee first to sell such portion of the mortgaged premises as remains in the hands of the mortgagor (if any), and if that is not sufficient to pay the mortgage debt, then to sell the different portions conveyed to third persons in the *inverse* order of the sales made by the mortgagor. While there is not entire harmony in the cases elsewhere as to this rule, and it does not seem to have commanded the approval of that great jurist, Mr. Justice Story, in so far as it relates to the equities of the purchasers from the mortgagor (see 2 Story Ec. Jur., sec. 1233a; *Savings Bank* v. *Creswell,* 100 U. S., 630), yet it must be regarded as settled in this State. *Stoney* v. *Schultz,* 1 Hill Ch., 465; *Norton* v. *Lewis,* 3 S. C., 25; *Lynch* v. *Hancock,* 14 S. C., 66; followed in several other cases. See, also, 3 Pom. Eq. Jur., sec. 1224. But the equity upon which this rule rests grows out of the fact that the first purchaser from the mortgagor had actually paid his money, looking to the residue of the mortgaged premises as a security for the payment of the mortgage debt; and it is well said in *Stoney* v. *Schultz,* at page 500: "Every subsequent purchase diminished the amount of this security, and operated as a fraud upon the first purchasers." This could not be said of a voluntary donee, who has parted with nothing of value, and cannot be said to be defrauded by the taking from him that for which he has paid nothing, and subjecting it to the payment of his donor's debts. Besides, a majority of this Court, in the case

of *Gordon* v. *Hazzard,* 32 S. C., 351, declined to apply this rule, in which the analogy was much closer than in the case now under consideration.    In that case two bonds, maturing at different dates, were secured by one mortgage.    The mortgagee assigned the bond last maturing to one person, and the other bond first maturing to another person; and the question was which of the two assignees were entitled to priority.    *Held,* that neither was entitled to priority, but that they must share *pro rata* in the proceeds of the sale of the mortgaged premises—the same being insufficient to pay both in full.    Now if the mortgage rule, as it may be called for the sake of convenience, could not be applied to a case very much alike *in principle at least,* there is still stronger reason why it should not be applied to a case like the present, where there is no valuable consideration upon which to rest the equity which gives rise to the rule.    But, again, there is another analogy which supports the view which we take. In 1 Story Eq. Jur., sec. 176, it is said a Court of Equity will not grant relief to one claiming under a *defective voluntary* conveyance against one also claiming under a voluntary conveyance.   So, also, the rule is well settled that equity will not enforce the specific performance of agreement unless it is based upon a valuable consideration.    1 Story Eq. Jur., sec. 793a, and the other sections therein cited.    3 Pom. Eq. Jur., sec. 1293, 1405.    We are not aware of any case in this State where the question which we have been considering has been distinctly decided; but counsel for Mrs. Carrie A. E. Steinmeyer has cited us to a case—*Thompson* v. *Murray,* 2 Hill Ch., 213—where the view which we take is plainly recognized.    The exceptions presenting the eighth question must, therefore, be sustained; and in this respect only the Circuit decree must be reversed.

The judgment of this Court is that the judgment of the Circuit Court, except upon the point hereinbefore stated, be affirmed, and that the case be remanded to that Court for such further proceedings as may be necessary to carry into effect the views hereinabove presented.