## TOWNES v. ALEXANDER.

1. FRAUD—BANKRUPT ACT.—There being no reason to disbelieve the statement of the wife that she had no knowledge or reason to suspect that her husband was insolvent, a payment by him of a debt due her within four months preceding involuntary bankruptcy, held not in contravention of bankrupt act.

2. AGENT—NOTICE—INSOLVENCY.—HUSBAND held not to be the agent of the wife in loaning him money, but her agent in paying a mortgage debt on her property with her money under her directions, but this does not charge her with knowledge of husband as to his own insolvency.

3. BANKRUPT ACT.—Sections 60b and 67c of bankrupt act of 1898 construed.

Before ALDRICH, J.; Greenville, August, 1903.    Affirmed.

Action by Samuel A. Townes, trustee of the bankrupt estate of Alexander against M. L. Alexander and Roxie A. Alexander.

The following is the Circuit decree:

"This case came before this Court upon the report of the master, finding in favor of plaintiff, and the exceptions thereto taken by the defendant. The case was referred to the master to take the testimony, and report his conclusions of law and fact.

"The master reports: 'This is an action of the plaintiff, as trustee of M. L. Alexander, against said bankrupt and his wife, Mrs. Roxie A. Alexander.

" 'Its purpose is twofold:

" '(1) To set aside a deed made by the bankrupt to his

wife on October 10, 1895, to a certain lot of land on Washington street, in the city of Greenville, in said county and State, as having been made at a time when the bankrupt was heavily indebted, and with a view of defrauding creditors; and

" '(2) In case said deed cannot be set aside, then that plaintiff be subrogated to the rights of certain mortgagees of said lot of land, upon the ground that these mortgages were paid by said bankrupt, out of assets which belonged to his creditors, at a time when he was insolvent and in contemplation of bankruptcy, and within four months prior to the filing of a petition in bankruptcy against him; that such payments were made with intent to hinder and delay and defraud creditors, and the bankrupt's wife, who had given the mortgages, and was benefited by their discharge, had reasonable cause to believe that it was intended thereby to give a preference.'

"Upon the first ground the master reports as follows:

" '(1) With reference to the attempt to set aside the deed; while there is some testimony that the bankrupt contemplated a fraud upon his creditors at the time he made the deed, and while it appears that he was then indebted, it also appears that all of the debts which he then owed were paid off before the proceedings in bankruptcy were instituted, and there is no showing of any intent to defraud the creditors now represented by the plaintiff as trustee, who have constructive notice of the recorded deed. I find the above as facts, and as matter of law I conclude that the plaintiff is not entitled to have the said deed set aside.'

"The plaintiff has not excepted to the findings of fact and conclusion of law of the master, as above stated, as provided in the Code, sec. 294. Such proceedings and conclusion, therefore, are binding upon the parties.

"I wish to say, that if the master's 'finding of fact,' as above stated, had been excepted to, and were now before me for consideration, I am not prepared to say that I would concur with him, and affirm all of his said findings, but I

would, without hesitation, concur in and affirm 'his conclusion of law.'

"The master further reports:

" '(2) As regard the mortgages, I find as matter of fact that on and prior to the 24th day of May, 1900, said M. L. Alexander was hopelessly insolvent and in contemplation of bankruptcy; that on said date he took certain assets which should have gone to the plaintiff, and with their proceeds paid off the mortgage in question, then resting upon his wife's property; that such payment was made with intent to hinder, delay and defraud his creditors; that his said wife allowed the bankrupt, infected with knowledge of his own condition, to act as her agent throughout the whole negotiation, and that she had reasonable cause to believe that it was intended thereby to give a preference; and that such transaction was within four months prior to the filing of a petition against said bankrupt,' and

" 'As matter of law, I find that the plaintiff is entitled to be subrogated to the rights of the mortgage creditors as against the land in question, and I recommend that said land be sold, and that out of the proceeds, the plaintiff be paid the sum of $1,377.72, with interest thereon from the 24th day of May, 1900.'

"The defendants both except to practically all of the findings of fact and conclusions of law of the master as above stated. These exceptions are not only numerous, but also quite long, and practically reopen the entire case. I think that it is the best for a proper understanding of the issues before the Court, that I should state the facts bearing upon those issues, before taking up the law of the case.

"M. L. Alexander and Roxie A. Alexander were married in 1884, or prior thereto, and have since lived together as man and wife.

"On the 24th day of November, 1884, Mrs. H. R. Walter, by her deed of said date, conveyed to Mrs. Roxie A. Alexander the land referred to in the complaint, and which the plaintiff contends he should have a lien upon. This land or

lot, in the city of Greenville, was paid for by Mrs. Alexander, in great part from her separate estate inherited from her father. The lot cost $500, of which Mrs. Alexander paid out of amount received from her father's estate, $450, and only $50 from her husband. It is not clear whether or not she borrowed it from him, or he gave it to her. She built, or caused to be built, upon said lot, the residence in which she and her husband, M. L. Alexander, and their children thereafter moved and have since occupied as a home.

"On the 12th day of November, 1888, Mrs. Roxie A. Alexander, for no real or valuable consideration, conveyed said lot to M. L. Alexander, her husband.

"On October 10th, 1895, the said M. L. Alexander reconveyed the premises to his wife, Roxie A. Alexander.

"These deeds were recorded. In view of the findings of the master as regard this last conveyance, it is not necessary to further consider the same, except to say, that while said deed cited that the consideration of the conveyance was a sum of money stated, yet as matter of fact, the husband paid the wife nothing for her conveyance to him, and she paid her husband nothing for his reconveyance to her. He reconveyed it to her because it was her property and she was entitled to the title thereof. The reason why the wife, in the first instance, conveyed the lot to her husband may be found in the evidence. It is in no wise detrimental to her present contention and reflects no discredit upon her as wife or woman. But, as I said, in view of the findings of the master, as to the last mentioned deed, these transactions do not demand the statement of further details.

"The premises in question are worth now from $1,500 to $2,000, and have been worth about the same for the past eight or ten years.

"M. L. Alexander carried on the business of selling pianos, organs, etc., in the city of Greenville from about 1892 up to the time he was adjudged a bankrupt. Some of the articles he sold as agent for the vendors and some he traded in as his own property.

"On January 24th, 1896, Roxie A. Alexander, individually, borrowed from Col. T. Q. Donaldson $750, in cash, and to secure the payment of same she gave him a mortgage of her house and lot—the home.

"Again, on November 6th, 1896, Roxie Alexander borrowed from Col. Donaldson $670, and to secure same gave him a second mortgage on her house and lot.

"On each occasion, and soon after she had gotten the cash from Col. Donaldson, Roxie A. Alexander lent the money to M. L. Alexander, and he used it in his business and for his own purposes.

"On June 27th, 1898, Col. Donaldson assigned the aforesaid two mortgages, and the note secured by them, to one A. M. Alexander, as guardian for Annie M. Alexander. Col. Donaldson received on said assignment the sum of $128.80, the principal and interest due at the time.

"About the first of May, 1900, M. L. Alexander took a number of evidences of indebtedness to himself, carried them to Anderson, S. C., and there sold them for $1,457. He was paid this amount in a certified check.

"M. L. Alexander endorsed his name on the back of this check and delivered it to his wife, Roxie A. Alexander, in payment of his indebtedness to her, being the amount she had borrowed from Col. Donaldson and had lent to M. L. Alexander.

"Mrs. Roxie A. Alexander took the check in payment of said debt, and retained it in her personal possession until she disposed of it as hereinafter stated. The check is dated May 23d, 1900.

"The day after M. L. Alexander had assigned said check to his wife, A. M. Alexander, guardian as aforesaid, came over from Spartanburg to Greenville to collect the amounts due on the two mortgages of Roxie A. Alexander, which he then held as assignee of Col. Donaldson. A. M. Alexander needed the money, for he had been called upon to settle his guardianship liabilities.

"A. M. Alexander went to M. L. Alexander's office, or

place of business, and stated his mission.   A. M. Alexander
had the notes and mortgages of Mrs. Roxie A. Alexander in
his possession.   M. L. Alexander calculated the amount due
as principal and interest upon said notes and mortgages.   He
sent a Mr. Warlick to his house to ask his wife to send him
the check, for the purpose of collecting same and of paying
up the debts of his wife to A. M. Alexander.   Mrs. Roxie
A. Alexander sent the check to her husband, and for the
purpose of its being used in the payment of her said debts.
She did not endorse her name upon the check, for it was
drawn payable to the order of M. L. Alexander, and, as he
had endorsed it, the check could be collected by him.   M. L.
Alexander deposited the check in a bank, gave his check
upon the bank to A. M. Alexander for the full amount due
him, as the assignee of his mortgages, and left the balance
in bank on deposit, subject to his order.   The amount paid,
as above stated, was $1,377.72, and it was paid on May 24th,
1900.

"A. M. Alexander marked the said notes and mortgages
paid and satisfied, and M. L. Alexander took the same, satis-
fied, to his wife, delivered them to her, and she now holds the
same, duly satisfied.

"Within less than four months after  M.L. Alexander had
sold property, had assigned the check, and the notes and
mortgages satisfied as above stated, M. L. Alexander was
forced into involuntary bankruptcy.

"There are several provisions of the bankrupt act of 1898
relied upon.   I will consider them separately.   Sec. 60, *a*
and *b* of said act, may be considered together.   I need not
cite the terms of the act or enter into a discussion of
the law, as the Supreme Court of this State have, in
two recent cases, settled the same.   I refer to *Sirrine,
Trustee,* v. *Stover Marshall Co.,* 64 S. C., 457, and *Hodges*
v. *Kohn,* 67 S. C., 69.   In the case first cited, at page 458,
the Supreme Court states the four elements that constitute an
illegal preference under the bankrupt act of 1898, as follows:
'1st. The transfer must be made from an insolvent person

to a creditor.   2d.  The effect of such transfer must be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. 3d.  The person receiving it as to be benefited thereby, or his agent acting therein, must have had reasonable cause to believe that it was intended thereby to give a preference; and 4th.  The transfer must have been made within four months before the filing of a petition in bankruptcy, or after filing the petition and before the adjudication.'

"In this case the plaintiff has established the 1st, 2d and 4th elements above stated.  The question then, is, has the 3d been established, to wit: that Mrs. Roxie A. Alexander or her agent must have had reasonable cause to believe that the payment by M. L. Alexander was intended to give her a preference.   I am aware of the rule, which is founded in good sense, that when a transaction between husband and wife is attacked for fraud, owing to their relation, such transaction must be scanned closely, and when the transaction seems to bear on its face any badge of fraud, it raises a presumption which the wife has to rebut.

"The case of *Medskee and wife* v. *Bonebrake, Assignee,* 108 U. S., 66, is in many respects similar to this.   It was under a bankrupt act, the wife was a creditor of her husband, afterwards forced into bankruptcy, and he had given her a mortgage to secure the old debt, which was attacked for fraud, &c.   Mr. Justice Miller delivered the opinion of the Court, in which he says, "There is no reason to disbelieve Mrs. Medskee when she swears positively that she did not know nor suspect her husband's insolvency until bankrupt proceedings were commenced.'

"Leaving out of consideration for the present the question of agency and circumstantial evidence, there is no reason to disbelieve Mrs. Roxie A. Alexander when she swears positively that she did not know, nor suspect, nor have any reasonable cause to believe, that her husband was insolvent until bankrupt proceedings were commenced against him, and that she had no reasonable cause to believe that her

husband's payment of his debt to her was intended as a preference. Her evidence is sustained by all of the parol evidence in the case which has any reference to the subject, and is consistent with all of the circumstantial evidence in the case.

"As to the agency of M. L. Alexander for his wife, I refer to the finding of the master, as follows: 'That his wife (Mrs. Alexander) allowed the bankrupt (M. L. Alexander, her husband), infected with knowledge of his own condition, to act as her agent throughout the whole negotiation.' The master's finding is in general terms, giving no intimation of his reason for such finding, and I am at a loss to understand the same. In so far as the real issue herein is concerned, there is every reason, springing out of the testimony, to find that he was not the agent of his wife. There is no need to go into the question of a married woman's rights. Mrs. Alexander and her husband were distinct persons. It seems to me an unsupported idea to suppose that either in the loan of the money or in the payment of the same, that M. L. Alexander was the agent of his wife. They were separate and distinct persons, neither under any disability and each acting for themselves. Their interests were, if anything, opposed, and they were dealing directly with each other. Neither has any use for an agent, Mrs. Alexander had no use for an agent, and if she had seen fit to employ an agent, it is neither reasonable nor in accord with the testimony herein, that she should have selected her husband as her agent, to lend her individual money to her husband, the borrower.

"As to the payment of Mrs. R. A. Alexander to A. M. Alexander, guardian. M. L. Alexander, the husband, attended to this matter for his wife, just as most husbands would have done, and, under strictest instructions, he acted as the agent of the wife in paying off the notes and mortgages. The master, in his report, speaks of R. A. Alexander's allowing M. L. Alexander, 'infected with knowledge of his own condition, to act as her agent throughout the

whole negotiation.' The provisions of the bankrupt act, sec. 60, b, provides that, 'If a bankrupt shall have given a preference * * * and the person receiving it, or to be benefited thereby, or his agent acting *therein,* shall have had reasonable cause to believe that it was intended thereby to give a preference, &c.' That provision expressly refers to the 'agent' of the person receiving or benefited by the preference, and is restricted to his actions in obtaining or receiving the preference at the time the preference was given. This is manifest, for the language of the act is, 'shall have had reasonable cause to believe that it was intended thereby to give a preference.'

"We have held, and for the reasons stated, that M. L. Alexander, as established by the evidence, came within subdivisions 1, 2 and 4 of the law, as construed in *Sirrine, Trustee. v. Stover, Marshall & Co.,* 64 S. C., 457; but that the evidence does not establish the 3d element. To come within the purview of the act, Mrs. Alexander, at the time she received the preference, must have been 'infected' by the knowledge of her 'agent.' We have held that he was not her 'agent,' and the finding of the master must be reversed.

"The act does not refer to any after-acquired knowledge of the party to whom a preference is given, and, therefore, when Mrs. Alexander received payment of the money, received in good faith, as an honest creditor, and she, then, had no reasonable cause to believe that such payment was intended as a preference to her, or to give her a preference over the other creditors of M. L. Alexander, she took and held the money as her individual, absolute property, freed from the provisions of the bankrupt act. When M. L. Alexander indorsed the check, and delivered it to his wife, it passed to her, and she held the legal title thereto. She held, and owned, not only the evidence of title to the money, representing the check, but she also held and owned money on deposit in the bank upon which the check was drawn—the money represented by the check. When M. L. Alexander, as the agent of his wife, received

the check, he did just what Mrs. Roxie A. Alexander in good faith expected him to do, and what she desired him to do, to wit: collect the money (her money) and pay the notes and mortgages—her notes and mortgages. I cannot conceive how, either in law or morals, the agency of M. L. Alexander, as above stated, can be associated with the payment of the money, by M. L. Alexander to Mrs. Roxie A. Alexander, so as to 'infect' her, at the time she received the money, with the 'knowledge' of the bankrupt, of which 'knowledge' she had no information or reasonable cause to believe that he possessed. To hold otherwise than as I have found, would be inconsistent with the evidence, law and morals of this case.

"Counsel for the plaintiff cited causes where the officers of a bank, to which they were personally indebted, gave the bank a 'preference' by giving to the bank, as represented by themselves, as officers, said 'preference,' or where a guardian, personally indebted to his ward, as such debtor, gave to himself as guardian of the ward a 'preference,' and the 'preferences' were held unlawful. These cases were not analogous to the present. In each case the same person or persons acted in dual capacity, first, as debtor; and second, as creditor or agent of the creditor; and it would be taxing credulity and asking too much, for any court to ignore the physical fact that the knowledge of the debtor must, of necessity, be known to the agent.

"As a conclusion of fact, I find that Mrs. Roxie A. Alexander, at the time she received the payment of the money from M. L. Alexander, and by which she was benefited, had no information or knowledge and that she had no reasonable cause to believe that it was intended by such payment to give her 'a preference,' as alleged in the complaint herein. Also, as a matter of fact, that M. L. Alexander was not the agent of Mrs. Roxie A. Alexander, or in any way acted for her in the payment of his debt to her, as hereinbefore stated.

"And, as a conclusion of law, that, in so far as the action is predicated upon sec. 60, b, of the bankrupt act, the exceptions of the defendants should be sustained, the report of the

master reversed, and the complaints herein should be dismissed with costs.

"But the plaintiff contends that his action is sustained by the provisions of sec. 67, e, of the bankrupt act of 1898. That section reads : 'That all conveyances, transfers, assignments or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act, and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration ; and all property of the debtor conveyed, transferred, assigned or encumbered as aforesaid shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt, and shall pass to said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors.' Let us assume, for the purpose of this case, that the word 'property,' as used in said section, includes 'money,' and that the word 'transfer' shall include the sale and every other and different mode of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a 'payment, pledge, mortgage, gift or security.' Bankrupt act, sec. 1, subdiv. 25. Let us assume that in the provision just cited, the word 'property' includes 'money,' and a payment of money, and, with them as assumptions, consider the act. Sec. 60, b, and sec. 67, e, are found in the same act, refer to one general subject, are each sections of a common act, and to be construed as parts of said act, the one consistent with the other, unless they are clearly repugnant.

"The evil legislated against in sec. 60, b, is an *unlawful preference*. That in sec. 67, e, in the 'transfer,' &c., of 'property' of the bankrupt, 'with the intent and purpose on his part to hinder, delay, or defraud his creditors.' These

3—69

sections are applicable to and intended to reach and correct
different violations of the act.   It does not appear that the
master construed sec. 67, e.   His report does not indicate
that he did. .

    "The question at the threshold of this inquiry is one of
fact, to wit: does M. L. Alexander pay his debt to Mrs.
Roxie A. Alexander, 'with the *intent* and *purpose* on his part
(not only to give her a preference, but also) to hinder, delay
and defraud his creditors?'   In stating the issue of fact thus,
it covered every possible view prejudicial to the defendants
and advantageous to plaintiff, and solves every issue of law
in favor of plaintiff.   After re-reading and considering all
of the evidence in the case, especially the parol testimony, I
am satisfied that, according to the great preponderance if not
the overwhelming weight of the testimony, that the above
stated question must be answered in the negative.

    "I might end this decree here, but I will consider the issues
somewhat further.   Under the findings of fact and conclu-
sions of law, hereinbefore stated, I have held that Mrs.
Roxie A. Alexander received the 'payment' of her debt
honestly and legally, and in accord with sec. 60, b, of the
bankrupt act.   That means that her title to the 'preference,'
and her right to retain the same, are legal and sustained by
the provisions of said act.

    "Plaintiff, by his counsel, contends that when we turn to
sec. 67, e, we must no longer consider sec. 61, b, but confine
ourselves to the one issue, to wit: did M. L. Alexander, '*on
his part,*' make said payment to his wife, 'with the *intent* and
*purpose*' to 'hinder, delay or defraud his creditors, or any of
them?'   According to this contention, it makes no difference
that Mrs. Alexander has been without fault in the premises
and is legally entitled to retain the 'preference,' under the act,
the sin of her husband committed under sec. 67, e, must be
visited upon her separate property, and that must be sold, or
held responsible for, the acts and intents of her husband.
Such a proposition cannot be sustained.   If M. L. Alexander
has been guilty of fraud, he should be punished for it, but an

innocent third person, even though it be the wife of the *tort feasor,* should not be punished with the stripe intended for the back of the real culprit. I think that the bankrupt act should, if possible (and it certainly is possible), be construed as an entire act, and that if, under one provision of the act, a creditor has acquired a legal right to a 'preference,' that such creditor is entitled to retain it, and that such 'preference' cannot be destroyed and annulled by the secret 'intent' on the part of the bankrupt to defraud other creditors, unknown to and unparticipated in by the creditor. One section, if necessary, will be regarded as the rule and the other the exception. The case of *Ex parte Chase,* in the 62 S. C., is in many respects analogous to this. On page 273-4, the Court says: 'That general and specific provisions in apparent contradiction, whether in the same or different statutes, and without regard to priority of enactment, may subsist together, the specific qualifying and supplying exceptions to the general.' See, also, *State* v. *Shaw,* 9 S. C., 94. It follows, therefore, that if the master based his conclusions upon sec. 67, e, he was in error. 1st, because his conclusions or findings of fact are not sustained by the evidence, and 2d, his conclusions of law are, for the reasons stated, erroneous. I have, heretofore, held that the findings of fact and conclusions of law of the master are erroneous under sec. 60, b.

"The defendant's exceptions, numbered I., XI., XII., and XIII, are either without merit or need no special consideration, especially as the action has been decided—rather, this appeal has been decided on the issues raised in the other exceptions considered by the Court.

"Wherefore, it is ordered, adjudged and decreed:

"1st. That the exceptions of the defendants to the report of the master herein, in so far as they are sustained in the decree herein, be and hereby are sustained.

"2d. That the report of the master herein, containing his findings of fact and conclusions of law, be and the same hereby is reversed.

"3d. That the complaint in this action be and hereby is

dismissed, and that the plaintiff do pay the costs of this action."

The plaintiff appealed on the following exceptions:

"It is submitted that the presiding Judge erred in the following particulars:

"1. In finding as a matter of fact that M. L. Alexander delivered the certified check of Mr. Willis unto his wife, Roxie A. Alexander, in payment of his indebtedness to her, and that she received the same in payment of said indebtedness.

"2. He erred in not holding that the delivery of such check to Roxie A. Alexander was not for the purpose of paying any indebtedness, and that said check continued to be the property of the said M. L. Alexander until he cashed the same.

"3. He erred in holding that M. L. Alexander was not the agent of his wife in the payment and discharge of the mortgage indebtedness; it being submitted that he should have held under the testimony that he was her agent in said transaction.

"4. He erred in not holding that M. L. Alexander at the time of said transaction knew that he was insolvent, and that he made said payment of said mortgage indebtedness in contemplation of bankruptcy.

"5. He erred in not holding that the said M. L. Alexander made said payment for the purpose of giving his wife some preference or unlawful benefit over the other creditors.

"6. He erred in not holding that the knowledge and purpose of the said M. L. Alexander were to be imputed to his wife, Roxie A. Alexander, by reason of his agency, and that the same affected the said transaction and rendered it voidable as to her.

"7. He erred in not holding that M. L. Alexander in making said payment and in giving such preference intended to hinder, delay and defraud his creditors.

"8. He erred in holding that Mrs. Roxie A. Alexander

received said preference honestly and legally and should be permitted to retain the same; it being submitted that she cannot retain the benefit of her agent's acts, and at the same time disclaim responsibility for his guilty knowledge and fraudulent intentions while so acting for her.

"9. He erred in holding that if a creditor obtains a preference he should be allowed to retain it, regardless of the intention of the bankrupt in creating such preference; it being submitted that under sec. 67, e, of the bankrupt act, such a preference would be a fraudulent preference, and voidable under said act.

"10. He erred in holding that sec. 67, e., of the bankrupt act of 1898, can only be construed in connection with sec. 60 b. of said act, and can only be operative as to such transactions as come within the scope of sec. 60, b.; the practical effect of such holding being to ignore and nullify sec. 67, e., for all purposes whatever.

"11. He erred in holding that the fraud of the husband should not be visited upon the separate estate of his wife, and in applying such principle to this case; it being submitted that no personal judgment against her is sought; and that the object of this suit is merely to be subrogated to the rights of the mortgagee whose mortgage was discharged by said unlawful preference.

"12. He erred in not holding that the said M. L. Alexander, being hopelessly insolvent and in contemplation of bankruptcy, did, on or about May 24, 1900, this being within four months of the filing of the petition in bankruptcy against him, apply certain funds belonging to himself in discharge of a mortgage made by his wife upon her property, and in not holding that such payment was made with intent to hinder, delay and defraud his creditors.

"13. He erred in not holding that the said Roxie A. Alexander, acting through her husband as aforesaid, allowed him, he being infected with knowledge of his own condition and his own purposes, to act as her agent in said transaction, and that she, through her said agent, had a reasonable cause

to believe that said transaction was intended as an unlawful preference."

*Messrs. Oscar Hodges, Haynesworth, Parker & Patterson,* for appellant (no argument given Reporter).

*Mr. B. M. Shuman,* contra, cites: *What is preference under bankrupt act:* Act of 1898, sec. 60; Loveland on Proc. in Bank., sec. 159; 64 S. C., 457; 97 U. S., 80; 103 U. S., 293; 64 S. C., 457; 108 U. S., 66...*As to agency:* 1 Ency., 1178. *Fraud of husband cannot bind wife unless she had notice:* 38 S. C., 457; 108 U. S., 66. *Mortgage paid cannot be restored:* 95 U. S., 3; 97 U. S., 304.

April 21, 1904.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   The decree of the Circuit Court and appellant's exceptions thereto are herewith officially reported.   After carefully considering the exceptions, we overrule the same and are satisfied to adopt the conclusions of fact and law in the Circuit decree, for the reasons therein stated.

The judgment of the Circuit Court is affirmed.