9454

MANSHIP *ET AL.* v. NEWTON *ET UX.*

(89 S. C. 467.)

1. HUSBAND AND WIFE—CONVEYANCES FROM HUSBAND TO WIFE—AGENCY OF HUSBAND—LIABILITY OF WIFE.—Where a husband, who generally acted as the wife's agent, made a conveyance, the transaction being one in which their interests were antagonistic, he could not be considered her agent, so as to bind her for any fraud upon his part as to his creditors in making the transfer.

2. FRAUDULENT CONVEYANCES—EVIDENCE—SUFFICIENCY.—The mere fact that defendant accepted a transfer of property immediately after a referee's report was filed, finding the grantor liable, is insufficient to show fraud on the part of defendant.

3. APPEAL AND ERROR—SCOPE OF REVIEW—BURDEN OF PROOF.—The burden is upon the appealing party to satisfy the Court by the preponderance of the evidence that the finding of the lower Court as to a matter of fact was incorrect.

Before BOWMAN, J., Bennetsville, August, 1915.   Affirmed.

Action by Mary A. Manship and another, as executrix and executor of the estate of Aaron T. Manship, against H. H. Newton and wife.   From a decree of the Circuit Court dismissing the complaint, and sustaining exceptions to the referee's report in favor of plaintiffs, they appeal.

The decree referred to is as follows:

This action was commenced by the service of summons and complaint dated October ——, 1913, and was for the purpose of setting aside the deed of H. H. Newton to his wife, Kate M. Newton, dated April 6, 1909.   The complaint set forth that the defendant, H. H. Newton, was indebted to the plaintiffs in the sum of $8,000, represented by a judgment against him dated May 3, 1913, upon which execution had been issued October 23, 1913, and had been returned by the sheriff *nulla bona.*   The plaintiffs alleged, in substance, that the above mentioned conveyance was made by the defendant, H. H. Newton, and received by his codefendant, Kate M. Newton, for the purpose and with a view to cheat and defraud the creditors of the said H. H. Newton, and especially the plaintiffs; that the conveyance was without consideration, and with the intention and purpose on the part of both defendants to defeat and defraud the plaintiffs of their judgment and to hinder and delay them in collecting the same; that while it was for an alleged consideration of $12,400, plaintiffs averred that it was really without any consideration, and a mere pretensive conveyance to defendant's wife.   Further, that defendant, H. H. Newton, in order to secure a part of the alleged purchase price, took from his wife, Kate M. Newton, a mortgage on the premises for $6,200, and that as a part of a scheme to defraud plaintiff in collecting their said judgment, the said alleged mortgage was transferred by H. H. Newton to third

parties unknown to the plaintiffs. Separate answers were filed by the two defendants, H. H. Newton represented by Messrs. Stevenson, Stevenson & Prince, and J. K. Owens, Esq., and Kate M. Newton represented by D. D. McColl, Esq. Both answers, in effect, denied all the allegations of the complaint, assailing the conveyance from Mr. Newton to his wife, and alleged that same was a *bona fide* transaction.

The case was referred to P. A. Murray, Esq., to report his conclusions of law and fact. On April ——, 1915, the referee filed his report, recommending that the deed from Mr. Newton to his wife be declared null and void in so far as the plaintiffs are concerned; that Mrs. Newton be declared to have an equitable mortgage on the premises to the extent of the money paid by her, subject, however, to the judgment of these plaintiffs. In due time, both of these defendants filed their separate exceptions to the report. In order to have a complete understanding of the case in all its relations, it is advisable and perhaps necessary to narrate briefly certain other litigations between the plaintiffs and the defendant, H. H. Newton. About December 11, 1899, plaintiffs' testator, Aaron T. Manship, the defendant, H. H. Newton, Sr., H. H. Newton, Jr., and D. A. Berry, formed a copartnership under the name of Manship Company for the purpose of conducting a naval stores business in the State of Georgia. The active managers of the business, A. T. Manship and D. A. Berry, died within a few months of each other, about the year 1900. H. H. Newton, Sr., then took charge of the business for the purpose of winding it up. For a considerable time, Mr. H. H. Newton was actively engaged in settling the affairs of this copartnership in Georgia, and his frequent and protracted absence practically required the abandonment of his law practice in Bennettsville. After considerable negotiation between Mr. Newton and the attorney for the Manship estate, it was found to be impossible to come to a settlement by agreement. The effort

to settle having failed, the Manship estate brought suit against Mr. Newton for $28,000. This case was referred, and, after great delay, the referee finally filed a report on April 2, 1909, finding that Mr. Newton was due the sum of approximately $10,000. The report of the referee was affirmed by the Circuit Court, from which an appeal was taken to the Supreme Court by Mr. Newton. The latter Court sent the case back for certain corrections, and there upon an agreement was reached, whereby Mr. Newton allowed judgment to be taken for the sum of $8,000, which represented the amount that he had originally offered to pay, $5,000, with interest at 6 per cent. from the commencement of the suit. Soon after the judgment was entered up Mr. Newton paid about $1,000 thereon. Mr. Newton asked plaintiffs to refrain from a levy until he had had the opportunity to have an accounting between himself and his wife, in order to ascertain whether or not the latter was indebted to him, the expectation being that any funds due from her should be applied to the judgment. The accounting disclosed the fact that Mr. Newton was indebted to his wife, instead of anything being due from her to him. As soon as Mr. Newton discovered the result of the accounting, he communicated it to plaintiffs' attorneys and offered, if they desired, to restore the case to its original status; that is, to place it in the same situation as it was under the judgment of the Supreme Court. This proposition was not accepted. Proceedings supplementary to execution were instituted, and Mr. Newton and his wife were examined before P. A. Murray, the referee chosen for this purpose. Thereafter, and without any report from the referee as to the supplementary proceedings, a reference was held in the above entitled case, being the one instituted to set aside the deed, and the testimony of Mr. Newton and his wife in the supplementary proceedings was introduced by consent by the plaintiffs. The only other testimony taken in the case to set aside the deed was that of certain witnesses for plaintiffs and

witnesses for defendants as to the value of the home place of H. H. Newton, conveyed in his said deed to his wife on April 6, 1909.

I have endeavored to give thorough consideration to the pleadings and testimony in this case, and my investigations have led me to the conclusion that the report of the referee is not supported by the testimony, and should be reversed. As I view the case, it is really one of narrow compass, and the relevant facts are really very few. While the above narrative as to previous litigation is necessary to a complete understanding of the present case and required considerable space for its recital, the essential facts which control the issues can be very briefly stated. It seems to me that this case was predicated upon the theory of a conveyance without consideration. The testimony shows, however, that there was actually a *bona fide* consideration of $12,400, evidenced by the bond and mortgage of the purchaser, Kate M. Newton, which said mortgage was executed simultaneously with the deed and sold by Mr. Newton to D. D. McColl, deceased, for $10,000 in money. There cannot be any question of the fact that Mr. Newton actually received this sum of money in cash; that the same was deposited to his credit in the Bank of Marlboro and was expended by him in the discharge of valid past-due obligations. Furthermore, Mrs. Newton was possessed of ample means to justify her purchase of the place, with the expectation that she would be able to pay, as they became due, the notes representing the purchase price, and I find, as a matter of fact, that she had paid, up to the time of the reference, to Mr. McColl or his representatives, four of the five notes that she gave, the fifth one not then being due; furthermore, the final purchase of this proprty on April 6, 1909, was the consummation of negotiations looking to its purchase, which had been pending between Mr. and Mrs. Newton for several years. Mrs. Newton had actually gone so far as to have an architect prepare, in 1905, plans for cottages which she expected to

erect upon the property when she purchased it.   Mrs. New-
ton, though possessed of independent means, had her prop-
erty chiefly in the form of farming land, and she was wait-
ing before closing the deal to get sufficient available cash to
pay the purchase price.   Finally, however, Mr. Newton
made up his mind to sell immediately, and it was nothing
more than a natural circumstance for .him to give his wife,
with whom he had been negotiating, the first opportunity to
buy the place.   As far as I am able to understand the testi-
mony, it shows a *bona fide* transaction, and I so hold.

It is true that on April 2, 1909, the referee's report in the
original case had been filed, finding that Mr. Newton owed
the Manships approximately $10,000 and that the convey-
ance from Mr. Newton to his wife was dated April 6, 1909.
A great deal was said in argument about the proximity of
these two dates, indicating a desire to defraud.   I cannot
view the circumstance in that light.   Mr. Newton made a
full and complete showing as to his disposition of the pro-
ceeds; it was paid on valid outstanding debts.   Furthermore,
on that date, according to the undisputed testimony, Mr.
Newton was perfectly solvent and had assets far more than
sufficient to pay all of his debts, even including the amount
found by the original referee to be due the Manships, which
was afterwards shown to be excessive by the judgment of
the Supreme Court.   The testimony in this case irresistibly
establishes the conclusion, not only that Mr. Newton was
solvent upon the date of the conveyance, but that he showed
entire willingness throughout this case to account for all
funds that had passed through his hands.   The schedule
of assets exhibited by him was not attacked; furthermore,
no effort whatever was made by plaintiffs to question the
checks, vouchers, and other papers offered by Mr. Newton
showing the disbursement of all funds that passed through
his hands from April 6, 1909, to the date of the reference,
and also giving, as he claimed, full exhaustive details as to
his property and that of Mrs. Newton handled by him.   The

referee frankly declared that he had not made any effort to investigate any of these papers and accounts, and, as far as I can see in the testimony, plaintiffs did not question these papers or the schedule of assets exhibited by Mr. Newton. In these circumstances, it seems to me that Mr. Newton's solvency at the date of the transfer is completely established. Even, however, if we disregard the testimony and assume that Mr. Newton was insolvent, I fail to find any testimony to show that Mrs. Newton either knew or suspected that her husband was insolvent, or that he was actuated by any intent to defraud in conveying the place to her.

A great deal was said in regard to the inadequacy of the consideration. The position taken by the defendant is that any testimony showing inadequacy of consideration was incompetent, for the reason that plaintiffs had alleged a voluntary conveyance. Without passing upon the force of this legal position, I hold that the testimony shows that the consideration was adequate. Certainly it cannot be said to show that it was so grossly inadequate as to raise a presumption of fraud. While it is perhaps difficult to harmonize the estimates made by the different witnesses, it is easy to understand that different men, after the lapse of six years, would entertain very different views as to the value of a piece of property at a previous date. The plaintiff's own witnesses varied from $35,000 to $16,000, thus showing among themselves great variety of opinion. A careful consideration of the testimony and a comparison with the sales of other similar properties lead me to conclude that the consideration was adequate.

The referee held that Mr. Newton was actuated by a fraudulent intent, and that such fraud would be imputable to Mrs. Newton by reason of the fact that her husband was her general agent. Inasmuch as I have held that Mr. Newton was not actuated by any fraudulent intent, it may not be necessary to pass specifically upon the question of agency, but, under all the circumstances, I think it is best for me to

state my views of the testimony relating to this subject. It is true that Mrs. Newton did at one place in her testimony speak of Mr. Newton as her general agent. A careful examination of all the testimony, however, leads irresistibly to the conclusion that in this particular transaction he could not have been her agent, and, furthermore, that he was not her general agent in the sense that he was intrusted with the management of all of her business. In this transaction I find that they dealt at arm's length and as principals. I find, furthermore, that a great number of exhibits show that, in many transactions involving large sums of money, Mrs. Newton transacted her own business. Even, however, if Mr. Newton had been the "general agent" of his wife, as we ordinarily understand that term, it is impossible to understand how in this particular transaction, when one was the purchaser and the other the seller, both dealing directly with the other, the unnecessary relation of principal and agent could be claimed to exist. In conclusion, I find, and hold, that neither under the assignment law nor under the Statute of Elizabeth have the plaintiffs made out a case which entitles them to have the deed set aside.

It is, therefore, ordered, adjudged and decreed that the complaint be dismissed with costs.

*Messrs. Gibson, Muller & Tison,* for appellant, cite: *As to Statute of Elizabeth:* 64 S. C. 364; 27 S. C. 286; 56 S. C. 154; 2 Bail. 123, 125; 1 Hill Ch. 297; 1 Hill L. 380; 4 S. C. 249; 16 S. C. 602; 27 S. C. 97; 32 S. C. 171; 53 S. C. 232; 21 S. C. 270; 82 S. C. 97; 64 S. C. 82; 94 S. C. 65 and 80.

*Mr. D. D. McColl,* for Mrs. Newton, respondent, cites: *As to right of action under Code, sec. 3732:* 44 S. C. 183; 64 S. C. 361; 26 S. C. 248. *As to Statute of Elizabeth:* Civil Code, sec. 3455; 20 Cyc. 748. *As to dealings between husband and wife:* 56 S. C. 170; 4 DeS. 234; 34 S. C. 416.

*Inadequacy of consideration:* 21 S. C. 270; 57 S. C. 285. *Insolvency of grantor:* 64 S. C. 357. *Pendency of suit:* 2 Bail. L. 118. *Bad faith of grantee:* 55 S. C. 28; 64 S. C. 62; 27 S. C. 286; 56 S. C. 154. *Agency of husband for wife:* 50 S. C. 284; 69 S. C. 30. *Time of intent:* 31 Cyc. 6195; 14 A. & E. Enc. of L. 265.

*Messrs. Stevenson, Stevenson & Prince* and *J. K. Owens,* for Mr. Newton, respondent. *Mr. Owens* cites: *As to cause of action:* 13 S. C. 439; Pom. Code Rem., sec. 580; and submits: *In order to set aside a deed under the assignment law, it must be shown:* 1st. *That the creditor was insolvent at time of making conveyance.* 2d. *That the conveyance was made with intent to give an unlawful preference.* 3d. *That the grantee had reasonable cause to believe that creditor was insolvent at the time of conveyance; and* 4th. *That the grantee had reasonable cause to believe that the conveyance was made in fraud of the Assignment Law:* 64 S. C. 254; 44 S. C. 183; 55 S. C. 198; 46 S. C. 166; 26 S. C. 441. *To set aside the deed under the Statute of Elizabeth it must be shown:* 1st. *That it was without consideration; or* 2d. *That it was male fide as to both parties to the instrument:* 64 S. C. 364; 27 S. C. 286; 56 S. C. 154. Cites: *As to inadequacy of consideration:* 21 S. C. 261; 57 S. C. 285; Tiffany Real Property, sec. 495. *Male fides:* 27 S. C. 286.

July 11, 1916.

The opinion of the Court was delivered by Mr. Justice Watts.

After protracted litigation in the case of *Manship v. Newton,* reported in 94 S. C. 260, 77 S. E. 941, the plaintiff obtained judgment against the defendant, H. H. Newton, for $8,000. On this judgment only $1,000 was paid. The defendant, H. H. Newton, was examined in supplementary

proceedings, and arrested under the act of arrest and bail, and held under bond of $8,000.   A *nulla bona* was returned in the case, and an action commenced for the purpose of setting aside a deed of conveyance from H. H. Newton to his wife, Kate M. Newton, of certain real property as being in contravention of the Statute of Elizabeth and the Assignment Act.   Mrs. Newton had also been examined with her husband in the supplementary proceedings.   After answers of the defendants were duly served and issue joined, the cause was referred to P. A. Murray, Esq., as special referee, to hear and determine all issues of law and fact and report to the Court.   After taking the testimony the referee filed his report on April 27, 1915, sustaining the contention of the plaintiff and recommending that the deed executed by H. H. Newton to his wife, as far as the plaintiff was interested, be set aside and canceled.   Exceptions were duly filed to this report by the defendants, and these exceptions were heard by his Honor, Judge Bowman, at the Summer term, 1915, for Marlboro county, who made a decree sustaining the exceptions to the special referee's report and dismissing the complaint.   The decree of his Honor, Judge Bowman, will be set out in the report of the case.   After entry of judgment and within due time the plaintiffs appeal, and by seven exceptions allege error on the Circuit Court, and the defendants ask that the decree be sustained upon one additional ground.

The first exception, as well as the additional ground of attorneys for respondent, raises the question as to whether the Court below was correct in holding that the suit was based exclusively upon the theory of a conveyance without consideration.   We are of opinion that the complaint was sufficient to allege a cause both in contravention of the Statute of Elizabeth and the Assignment Act, and do not intend to take up and discuss the exceptions made separately, but content ourselves with determining whether or not there ·was fraud, actual or constructive, in the transactions between

the defendants, whether the deed was pretensive and fraudulent and made with intent to hinder, delay, defeat, or defraud the creditors of H. H. Newton; whether it was without consideration or inadequate consideration. The complaint of the plaintiffs and exceptions of the plaintiffs charge fully that the defendants acted in contravention of the Statute of Elizabeth and the Assignment Act, and allege error on the part of his Honor in not so holding and finding and decreeing that the deed should be set aside on one or both grounds. Was his Honor in error in holding and decreeing as he did? We will consider the evidence against the defendant, Mrs. Newton. The referee does not find that she was guilty of any fraud, as he says in his report:

"We will now leave Mrs. Newton out of consideration, as the undisputed testimony is that Mr. Newton acted as agent for Mrs. Newton in all matters relating to her property, and, this being the case, any fraud on the part of Mr. Newton will be imputed to her, although she did not actually participate in it."

His Honor finds that there was no fraud upon the part of either defendant. So we have a concurring finding of fact on the part of the special referee that there was no fraud on the part of Mrs. Newton, and she did not actually participate in it, even if her husband and codefendant did perpetrate a fraud, and there is no preponderance of the evidence to overcome this finding of the Circuit Court. Both the referee and Circuit Judge acquit Mrs. Newton in any participation in the fraud charged against Mr. Newton.

The referee attempts to bind Mrs. Newton for the acts of her husband, who was her agent, and finds if he was guilty of fraud his act would be imputed to her, although she did not actually participate in it. The conclusion was wrong. If H. H. Newton, her agent, had been dealing with third parties in reference to her affairs, and acting within the scope of his agency, then, what knowledge he had would be imputed to her, and his acts would be bind-

ing on her.  But the transaction between them in buying and conveying this property was an independent transaction, in nowise connected with their affairs as principal and agent, and was not in reference to the separate estate of Mrs. Newton that Mr. Newton looked after, but they were at arm's length, dealing with each other as individuals and not as principal and agent, but with a piece of property entirely disconnected with her property managed by Mr. Newton as agent for her, and in no manner connected therewith.  The trade was between them as individuals, and the interests were antagonistic, and in the transaction it cannot be conceived that Newton was his wife's agent.  *Knobelock* v. *Bank,* 50 S. C. 284, 27 S. E. 962; *Townes* v. *Alexander,* 69 S. C. 30, 48 S. E. 214.  In order to sustain the exceptions, it must be shown that both parties were guilty of fraud.

The only badge of fraud shown as far as Mrs. Newton is concerned is that the conveyance was shortly after the report of referee holding Newton liable was filed.  The evidence satisfies us that she acted in good faith throughout the whole transaction, and there is nothing to show that Mrs. Newton did anything whereby it could be inferred that her conduct was in any manner fraudulent, or that she participated in any fraud.  There is not evidence enough to raise a suspicion of wrongdoing on her part, much less to convict her of intentional wrongdoing. The transaction on her part throughout was in good faith based upon valuable consideration.  Under the evidence in the case, and the cases of *Steinmeyer* v. *Steinmeyer,* 55 S. C. 28, 33 S. E. 15; *Lenhart* v. *Ponder,* 64 S. C. 354, 42 S. E. 169, the exceptions as to Mrs. Newton must be overruled.

As to plaintiffs' exceptions as to the defendant, H. H. Newton, the Circuit Court found that he was guilty of no fraud, actual or constructive.  It was incumbent upon the appellants to satisfy this Court by the preponderance of the evidence that this finding was

incorrect.   This the appellants have failed to do.   All exceptions are overruled.

Judgment affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE HYDRICK concur in the opinion of the Court.

MR. JUSTICE FRASER, *concurring.*   I concur.   What was Mrs. Newton's intention in buying the land?   If she bought with the intent to aid her husband in a scheme to prevent the collection of plaintiff's debt, the deed is void.   If she bought the land because she really wanted it and intended to buy it at some time, and it was now or never, then the sale was valid.   Mr. Newton went to her and said, "I am going to sell this place immediately."   It goes with the saying that she would be seized with an almost frantic determination to save her home, with its associations, from the hands of strangers, and how that intention was her sole purpose.

MR. JUSTICE GAGE did not participate in the consideration of this case.